UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**JAMES PRESTON**                                                        **CIVIL ACTION**

**VERSUS**                                                                      **NO. 20-3075**

**JAMES LEBLANC, SECRETARY**                                 **SECTION: "F"(3)**

### REPORT AND RECOMMENDATION

James Preston, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that his application be **DISMISSED WITH PREJUDICE**.

Although many of the state court records concerning petitioner's case were destroyed in the aftermath of Hurricane Katrina,[1] the parties agree that he pleaded guilty to two counts of murder and two counts of aggravated rape and was sentenced to four terms of life imprisonment in 1969 and 1970. Further, this Court's records reflect that he previously sought and was denied federal habeas corpus relief in 1988.[2]

Because petitioner's crimes were committed when he was sixteen years old, he later sought resentencing in the state courts pursuant to Graham v. Florida, 560 U.S. 48 (2010), and Miller v. Alabama, 567 U.S. 460 (2012).[3] Ultimately, relief was granted, and he was resentenced to four

---

[1] See State Rec., Vol. 2 of 3, letter from Arthur A. Morrell to Justin I. Woods dated June 18, 2018.
[2] See Rec. Doc. 3-1.
[3] Both Graham and Miller concerned juveniles being sentenced to terms of life imprisonment without the possibility of parole. For juveniles who committed **non-homicide** offenses, Graham imposed a categorical bar on life-without-parole sentences. Graham, 560 U.S. at 74-75 ("This Court now holds that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole. … A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."). For juveniles who committed **homicide** offenses, the United States Supreme Court did not go quite so far in Miller. Rather, Miller prohibited only making such sentences **mandatory**. The Supreme Court explained:

concurrent life sentences **with the benefit of parole** on May 2, 2017.[4]  On April 3, 2019, the Louisiana Fourth Circuit Court of Appeal affirmed his new sentences,[5] and the Louisiana Supreme Court then denied his related writ application on October 15, 2019.[6]

On or about November 9, 2020, petitioner filed the instant federal application seeking habeas corpus relief.[7]  The state filed a response in opposition,[8] and petitioner filed a reply.[9]

## **Timeliness**

In its response, the state first argues that petitioner's federal application is untimely.  On that argument, the state is wrong.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner is generally required to bring his § 2254 claims within one (1) year of the date on which his underlying state criminal judgment became "final."  28 U.S.C. § 2244(d)(1)(A).  However, that judgment is not considered final under the AEDPA until **both** the conviction **and** the sentence are final.  See Burton v. Stewart, 549 U.S. 147, 156-57 (2007); Scott v. Hubert, 635 F.3d 659, 665-67

---

> [T]he Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders.  By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment.  Because that holding is sufficient to decide these cases, we do not consider [the] alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles, or at least for those 14 and younger.  But given all we have said … about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon.  … Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.

Miller, 567 U.S. at 479-80 (citation omitted).
[4] State Rec., Vol. 2 of 3, transcript of May 2, 2017, pp. 19-20.
[5] State v. Preston, 267 So. 3d 667 (La. App. 4th Cir. 2019); State Rec., Vol. 3 of 3.
[6] State v. Preston, 280 So. 3d 607 (La. 2019); State Rec., Vol. 3 of 3.
[7] Rec. Doc. 1.
[8] Rec. Doc. 14.
[9] Rec. Doc. 17.

(5th Cir. 2011). Moreover, with respect to determining that date of finality, the United States Fifth Circuit Court of Appeals has explained: "When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court." Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

Here, as noted, petitioner was **resentenced** on May 2, 2017, and it is the constitutionality of those new sentences which he challenges in this federal application.[10] Moreover, as also noted, the Louisiana Supreme Court denied his direct-review writ application challenging those new sentences on October 15, 2019. Therefore, those new sentences did not become final for AEDPA purposes until ninety days later on January 13, 2020. Accordingly, under § 2244(d)(1)(A), petitioner then had until **January 13, 2021**, to bring this federal challenge. See, e.g., Smith v. Vannoy, Civ. Action No. 20-258, 2021 WL 3605195, at *4 (E.D. La. July 27, 2021), adopted, 2021 WL 3603326 (E.D. La. Aug. 13, 2021). In that this application was filed in **November of 2020**,[11] it was timely.

---

[10] Although petitioner previously filed a federal habeas corpus petition in 1988 challenging the same underlying convictions, his instant petition challenges only the new sentences imposed in 2017. Therefore, it is not a "second or successive" petition which requires authorization for filing. See Terrick v. Vannoy, Civ. Action No. 19-985, 2020 WL 2866603, at *6 (E.D. La. Jan. 13, 2020), adopted, 2020 WL 1271138 (E.D. La. Mar. 17, 2020), certificate of appealability denied, No. 20-30227 (5th Cir. Mar. 19, 2021), cert. denied, No. 20-7977, 2021 WL 4507967 (U.S. Oct. 4, 2021); see also Smith v. Vannoy, Civ. Action No. 20-258, 2021 WL 3605195, at *4 (E.D. La. July 27, 2021), adopted, 2021 WL 3603326 (E.D. La. Aug. 13, 2021).

[11] "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Although that date is not reflected in the record, it obviously fell within the limitations period because the application was actually received by this Court on November 10, 2020.

Because petitioner's federal application was timely filed, and because the state does not argue that he failed to exhaust his remedies in the state courts,[12] the Court will proceed to a review of his claims on the merits.

## Merits

In the instant federal application, petitioner claims that his new sentences violate constitutional rights guaranteed to him by the Due Process Clause, the *Ex Post Facto* Clause, and the Eighth Amendment. On direct appeal, the Louisiana Fourth Circuit Court of Appeal denied those claims, holding:

> Mr. Preston makes several arguments, none of which have merit.
> Mr. Preston maintains that the United States Supreme Court has made "a substantive constitutional change making life sentences without parole imposed on juveniles convicted of nonhomicide [sic] and certain homicide offenses unconstitutional." He argues that he has a "due process right to fair notice of the substantive penalty;" that is, a "right to fair notice of the severity of the penalty the State intended to impose." Mr. Preston's argument in this regard is unclear, although he concludes with the statements that "[t]he U.S. Supreme Court invalidated the penalty provisions of La. R.S. 14:30 and R.S. 14:42 making those statutes unenforceable as they pertain to [him] because what remains 'is incapable of functioning independently'" and that "[t]he invalidation of [his] life sentences without parole cannot be substituted with reformatory procedures under the guise of severability."
> Contrary to Mr. Preston's contention, neither La. R.S. 14:30, nor La. R.S.14:42, have been "invalidated" by the United States Supreme Court. What those decisions mean was recently explained by this Court:
>
>> In Miller v. Alabama[,] the United States Supreme Court held that it is unconstitutional to sentence juvenile homicide offenders to life in prison without the possibility of parole. The Supreme Court's decision did not explicitly ban sentencing juvenile homicide offenders to life in prison without possibility of parole. . . .
>
> State v. Olivier, 17-0724, p. 4 (La. App. 4 Cir. 2/21/18), 238 So. 3d 606, 609, writ denied, 18-0492 (La. 1/14/19), 261 So.3d 783. Numerous decisions have noted that "[t]he sole question to be answered in a Miller hearing is whether the defendant

---

[12] See Rec. Doc. 14, p. 5.

4

should have a chance for parole." State v. Calhoun, 51,337, p. 7 (La. App. 2 Cir. 5/17/17), 222 So. 3d 903, 907, writ denied, 17-1081 (La. 4/27/18), 241 So.3d 307; State v. Jackson, 51,527 (La. App. 2 Cir. 8/9/17), 243 So.3d 1093, 1098, writ denied, 17-1540 (La. 5/25/18), 243 So. 3d 565; State v. Comeaux, 17-682, p. 19 (La. App. 3 Cir. 2/15/18), 239 So. 3d 920, 936, writ denied, 18-0428 (La. 1/14/19), 261 So. 3d 783. The Louisiana Supreme Court has also quoted Montgomery [v. Louisiana, 136 S.Ct. 718 (2016),] for this position:

> Giving Miller retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them.

State ex rel. Jenkins v. State, 17-0302, p. 1 (La. 8/31/18), 252 So. 3d 476 (quoting Montgomery, 136 S.Ct. at 736).

Furthermore, "in a Miller hearing there is no consideration of whether there should be a downward departure from the mandatory sentence of life imprisonment at hard labor. Rather, the court **only** considers whether that mandatory sentence should include parole eligibility." (emphasis in original). State v. Sumler, 51,324, p. 9 (La. App. 2 Cir. 5/2/17), 219 So.3d 503, 509. Accordingly, in this case, the trial court, in resentencing Mr. Preston to life with the benefit of parole, met the requirements of Miller. To the extent that Mr. Preston's "fair notice" argument is that, because life with parole was not a sentencing option at the time of the original offense, he has not been afforded constitutional protection, this Court in Olivier noted that "[t]his argument has previously been rejected by a Louisiana appellate court, which reasoned that there is no deprivation of fair warning when the requirements to prove [the crime at issue] have not changed and therefore, a defendant knew his conduct would constitute criminal behavior." Olivier, 17-0724, p. 5, 238 So. 3d at 610.

For non-homicide offenses, as in this case, where Mr. Preston was convicted of aggravated rape, the United States Supreme Court has indicated that life sentences without the possibility of early release are unconstitutional. See Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L. Ed. 2d 825 (2010); State ex rel. Morgan v. State, 15-0100 (La. 10/19/16), 217 So. 3d 266, 277. However, as this Court noted in State v. Jones, 13-1614, p. 2 (La. App. 4 Cir. 8/20/14), 2014 WL 4161563 (quoting State v. Shaffer, 11-1756, (La. 11/23/11), 77 So. 3d 939, 941), all that is "required under . . . Graham . . . [is] for the juvenile defendants' life sentences for non-homicide crimes to be amended to delete the restrictions on parole eligibility such that there is a 'meaningful opportunity to secure release based on demonstrated maturity and rehabilitation.'"). In Shaffer, for example, the Court found that the trial court's amending of the defendant's sentence so as to

5

delete the restriction on parole eligibility met the requirements of Graham. The Shaffer Court concluded:

> We therefore amend the sentence of relator [defendant] to delete the restriction on parole eligibility. . . We reiterate that this Court is not ordering relators released on parole. The determination of whether relators may be released on parole falls within the exclusive purview of the Board of Parole, charged with the duty of ordering parole "only for the best interest of society, not as an award of clemency." La. R.S. 15:574.4.1(B). Access to the Board's consideration will satisfy the mandate of Graham.

Shaffer, 11-1756, p. 4 (La. 11/23/11), 77 So. 3d 939, 942-43. See also, State v. Brown, 51,418, p. 10 (La. App. 2 Cir. 6.21.17) --- So.3d ----, ----, 2017 WL 2665128, writ denied, 17-1287 (La. 4/27/18), 241 So. 3d 306 (quoting Miller, 132 S.Ct. at 2469) ("where parole eligibility is permitted, Miller [does] not impose a requirement that a defendant be allowed to present mitigating factors. Instead, a sentencing court's obligation to consider youth-related mitigating factors is limited to cases in which the court imposes a life sentence without parole eligibility.").

In the instant matter, therefore, the trial court's re-sentencing Mr. Preston to life with the benefit of parole met the requirements of Shaffer.

Mr. Preston also argues that his sentence violates the *ex post facto* laws because Miller was decided after his conviction and original sentencing. While the "U.S. Const. Art. I, § 10 and La. Const. art. I, § 23 prohibit *ex post facto* application of criminal law by the State," our jurisprudence reflects no such violation by "the application of La.C.Cr.P. art. 871 and La. R.S. 15:574.4(E-G)." State v. Williams, 18-0103, p. 5 (La. App. 4 Cir. 5/16/18), 247 So. 3d 129, 132.[FN3] There, the Court observed:

> In State v. Williams, 2015-0866, pp. 15-16 (La. App. 4 Cir. 1/20/16), 186 So. 3d 242, 252, this Court held that applying La. C.Cr.P. art. 878.1 and La. R.S. 15:574.4(E) to resentence a juvenile convicted of a 2006 second degree murder pursuant to Miller did not violate the *ex post facto* clause. This Court reasoned that the Louisiana Supreme Court, in State v. Jones, 2013-2039 (La. 2/28/14), 134 So. 3d 1164, ordered implementation of Miller through the application of La. C.Cr.P. art. 878.1 and La. R.S. 15:574.4(E). Williams, 2015-0866, pp. 15-16, 186 So.3d at 252 (citing State v. Graham, 2014-1769, p. 8 (La. App. 1 Cir. 4/24/15), 171 So. 3d 272, 278).
>
> In State v. Shaw, 51, 325, p. 10 (La. App. 2 Cir. 5/17/17), 223 So. 3d 607, 613, the Second Circuit, citing this Court's decision in Williams, also held that there is no *ex post facto* violation from the

6

> application of La. C.Cr.P. art. 878.1 and La. R.S. 15:574.4(E) in resentencing a defendant pursuant to Miller. Further, the Second Circuit stated that application of those statutes does "not subject a defendant to a harsher sentence or a longer period of incarceration."

Id., pp. 4-5, 247 So.3d at 132. See also, State v. Graham, 14-1769, p. 8 (La. App. 1 Cir. 4/24/15), 171 So. 3d 272, 278 ("any consideration of La. C.Cr.P. art. 878.1 and La. R.S. 15:574.4(E) in resentencing the defendant, would not have been, contrary to the defendant's assertion, an ex post facto violation"). Accordingly, we find no *ex post facto* violation in this case by the trial court's resentencing Mr. Preston to life *with* the benefit of parole.

> [FN 3] La. C.Cr.P. art. 878.1 governs hearings to determine the parole eligibility for certain juvenile offenders, while La. R.S. 15:574.4 governs parole eligibility for juvenile offenders.

Finally, Mr. Preston argues that his resentence constitutes cruel, unusual and excessive punishment. This contention has been addressed and rejected. See, e.g., State v. Williams, 15-0866, p. 20, n.4, 186 So.3d at 255 ("this Circuit and others have found that life sentences without parole were not excessive for seventeen and fifteen year old defendants."); State v. Graham, 14-1769, p. 14 (La. App. 1 Cir. 4/24/15), 171 So. 3d 272, 282, writ denied, 15-1028 (La. 4/8/16), 191 So. 3d 583 ("a life sentence without parole under Miller is not excessive and, therefore, not unconstitutional.").

Again, "the holding of Miller was that sentencing schemes which require mandatory life without parole sentences for juvenile homicide defendants violate the Eight Amendment's prohibition against cruel and unusual punishment." State v. Plater, 51,338, p. 6 (La. App. 2 Cir. 5/17/17), 222 So. 3d 897, 901, writ denied, 17-1021 (La. 5/11/18), 241 So. 3d 1009, and writ denied, 17-1190 (La. 5/11/18), 241 So. 3d 1013; See also, State v. Brown, 12-0872, p. 1 (La. 5/7/13), 118 So.3d 332, 332 (citing Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L. Ed. 2d 825 (2010)) ("the Eighth Amendment's prohibition of cruel and unusual punishment forbids the imposition of life in prison without parole for juveniles committing non-homicide crimes, applies *only* to sentences of life in prison without parole . . . .") (emphasis added).

Here, Mr. Preston was not sentenced to life without parole; the trial court properly resentenced him to life with parole on all counts, including the homicide and non-homicide convictions.[13]

---

[13] State v. Preston, 267 So. 3d 667, 669-72 (La. App. 4th Cir. 2019); State Rec., Vol. 3 of 3.

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[14]

Where, as here, a petitioner's claims were denied on the merits in state court, a federal habeas court must accord the state court decision a high degree of deference so as to "prevent federal habeas 'retrials'" and "ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); accord Langley v. Prince, 926 F.3d 145, 155 (5th Cir. 2019) (noting that the AEDPA imposes a "relitigation bar" on claims adjudicated on the merits by the state court).

For example, as to pure questions of fact, a state court's factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Further, as to pure questions of law and mixed questions of law and fact, a federal court must defer to a state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have

---

[14] State v. Preston, 280 So. 3d 607 (La. 2019); State Rec., Vol. 3 of 3.

held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (footnotes, internal quotation marks, ellipses, and brackets omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014). However, a federal habeas court must be mindful that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; accord Harrington v. Richter, 562 U.S. 86, 102-03 (2011) ("Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." (quotation marks omitted)); Langley, 926 F.3d at 156 ("The Supreme Court has repeatedly held that it is not enough to show the state court was wrong."); Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application

of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

Therefore:

> "[T]he [AEDPA's] relitigation bar forecloses relief unless the prisoner can show the state court was *so* wrong that the error was well understood and comprehended in existing law beyond any possibility for fairminded disagreement. In other words, the unreasonable-application exception asks whether it is beyond the realm of possibility that a fairminded jurist could agree with the state court.

Langley, 926 F.3d at 156 (citations and quotation marks omitted). "Under AEDPA's relitigation bar, the very existence of reasonable disagreement forecloses relief." Id. at 170.

Further, the Supreme Court has expressly cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Woodall, 572 U.S. at 426 (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).

Pursuant to the foregoing standards of review, this federal habeas court must defer to the state court decision denying petitioner's claims unless he establishes that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). For the following reasons, the Court finds that petitioner has not made that showing.

Although petitioner's first two claims are a bit opaque, both obviously stem from his belief that the sentencing rules were unfairly changed long after his crimes were committed. He opines that such changes violated his right to fair notice under both the Due Process Clause and the *Ex Post Facto* Clause.

The Court will first address the claim asserted under the *Ex Post Facto* Clause. Specifically, petitioner appears to argue that the state courts violated the *Ex Post Facto* Clause by holding that Graham and Miller violations could be remedied simply by providing convicted defendants with the opportunity to seek parole. However, that claim fails for the most basic of reasons, namely, that "[t]he *Ex Post Facto* Clause, by its own terms, **does not apply to courts**." Rogers v. Tennessee, 532 U.S. 451, 460 (2001) (emphasis added); accord Frank v. Magnum, 237 U.S. 309, 344 (1915) ("[I]t is sufficient to say that the constitutional prohibition: 'No state shall . . . pass any bill of attainder, *ex post facto law*, or law impairing the obligation of contracts,' as its terms indicate, is directed against legislative action only, and does not reach erroneous or inconsistent decisions by the courts."); Jordan v. Watkins, 681 F.2d 1067, 1079 (5th Cir. 1982) ("The ex post facto clause is a limitation upon the powers of state legislatures and does not by its own terms apply to judicial decisions.").

Petitioner's related claim asserting a due process violation requires closer attention, because state courts are at least subject to prohibitions imposed by the Due Process Clause. Moreover, it is "undoubtedly correct" that "the Due Process and *Ex Post Facto* Clauses safeguard common interests – in particular, the interests in fundamental fairness (through notice and fair warning) and the prevention of the arbitrary and vindictive use of the laws." Rogers, 532 U.S. at 460. As a result, "limitations on *ex post facto* judicial decisionmaking are inherent in the notion

11

of due process." Id. at 456. Accordingly, "a state supreme court is barred by the due process clause from achieving by judicial construction a result which a state legislature could not obtain by statute." Jordan, 681 F.2d at 1079.

Nevertheless, that is as far as petitioner's due process argument can take him, because the remainder of the argument lacks merit. While it is true that due process safeguards criminal defendants against "unjustified and unpredictable breaks with prior law," the Supreme Court has recognized that law is not static and that courts sometimes must confront new circumstances and fact patterns. See Rogers, 532 U.S. at 461. In light of that reality, the Supreme Court has held that the due process principle of fair warning is violated by a court's decision on a matter of criminal law only if the decision was "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." See id. at 462.

Because its rulings in Graham and Miller brought about significant changes in the law with broad ramifications, the United States Supreme Court afforded the states leeway to choose for themselves how to implement those changes. As is evident here, the Louisiana courts opted to implement Graham and Miller simply by deleting any offending prohibitions on parole. That decision was not a "break" with prior decisional law concerning remedying of such violations for a simple reason: because the violations were newly recognized, **there was no existing jurisprudence directly on point**. Therefore, petitioner had no reasonable expectation that Graham and Miller violations would be remedied in any particular way, and the fact that state courts failed to adopt an alternative remedy which might have been more advantageous to him is immaterial.

For these reasons, it has consistently been held that Louisiana's manner of remedying Graham violations did not violate due process. See, e.g., Burge v. Cain, Civ. Action No. 13-721, 2015 WL 4168111, at *8-11 (E.D. La. July 1, 2015); accord Skipper v. Cain, Civ. Action No. 14-651, 2017 WL 6884335, at *3 (M.D. La. Nov. 6, 2017), adopted, 2018 WL 343851 (M.D. La. Jan. 9, 2018). It has likewise consistently been held that Louisiana's manner of remedying of Miller violations did not violate due process. Trevathan v. Vannoy, Civ. Action No. 18-7682, 2019 WL 11556747, at *4-5 (E.D. La. Jan. 4, 2019), adopted, 2020 WL 7728759 (E.D. La. Dec. 29, 2020); accord Smith v. Vannoy, 2021 WL 3605195, at *12-14 (E.D. La. July 27, 2021), adopted, 2021 WL 3603326 (E.D. La. Aug. 13, 2021); Terrick v. Vannoy, 2020 WL 2866603, at *10-12 (E.D. La. Jan. 13, 2020), adopted, 2020 WL 1271138 (E.D. La. Mar. 17, 2021), certificate of appealability denied, No. 20-30227, 2021 WL 1390386 (5th Cir. Mar. 19, 2021), cert. denied, No. 20-7977, 2021 WL 4507967 (U.S. Oct. 4, 2021). Therefore, petitioner's due process claim should be rejected.

That leaves only petitioner's final claim in which he argues that his new sentences are unconstitutional under the Eighth Amendment because they **still** run afoul of Graham and Miller. That argument is likewise meritless. As previously noted, Graham held that a sentence of life **without parole** is unconstitutional for juvenile offenders who commit non-homicide offenses. Graham, 560 U.S. at 74. Because petitioner's new sentences for aggravated rape provide an opportunity for parole, they do not violate Graham. See, e.g., Walder v. Cain, No. 13-4745, 2015 WL 349285, at *3-4 and *10-12 (E.D. La. Jan. 26, 2015). Similarly, as also previously noted, Miller held that a mandatory sentence of life **without parole** is unconstitutional for juvenile offenders who commit homicide offenses. Miller, 567 U.S. at 465. In that petitioner's new

13

sentences for murder likewise provide an opportunity for parole, they cannot be said to violate Miller. See, e.g., Jackson v. Vannoy, 981 F.3d 408, 417 (5th Cir. 2020).

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application seeking habeas corpus relief filed by James Preston be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this  19th  day of October, 2021.

**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**